## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JESSICA BUSH**                                                          **CIVIL ACTION**

**VERSUS**                                                                      **No. 22-2746**

**BROAD MANAGEMENT GROUP, ET AL.**                          **SECTION I**

### ORDER & REASONS

Before the Court is a motion[1] for summary judgment filed by defendants Broad Management Group ("BMG") and Cristina Perez ("Perez") (collectively, "defendants"). Plaintiff Jessica Bush ("Bush") opposes the motion.[2] For the reasons below, the Court denies the motion.

### I.      FACTUAL BACKGROUND

Bush was formerly a tenant of Pinecrest Apartments, a complex managed by BMG and Perez. Bush owns two dogs, both pit bulls. Bush claims that these two dogs are emotional support animals ("ESAs") that assist her with her anxiety and depression disorders, post-traumatic stress disorder, chemical seizures, and agoraphobia,[3] and that, despite being properly informed of this fact, BMG and Perez failed to provide a reasonable accommodation to allow her to keep the dogs in her apartment, and that they retaliated against her due to her request for that accommodation. Bush asserts claims for violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, violation of the Louisiana Equal Housing Opportunity Act

---

[1] R. Doc. No. 38.
[2] R. Doc. No. 44.
[3] *See generally* R. Doc. No. 1.

("LEHOA"), and negligent hiring, training, and supervision in violation of Louisiana law.[4]

Many of the underlying facts are disputed. Bush moved in to the apartment in January of 2022. Defendants assert that they were unaware that Bush had two pit bulls in her apartment "until Perez took over the position of property manager in March [of] 2022."[5] Defendants argue that, in March of 2022, plaintiff provided to Perez "what [plaintiff] styled a 'request for reasonable accommodation' dated January 17, 2022 along with a short letter from Dr. Gregory Caudill[.]"[6] The letter, which is dated January 17, 2022, states that Bush has "been diagnosed with an emotional disability by my licensed mental health professional," and that she was therefore "requesting reasonable accommodation for [her] disability under the Fair Housing Act."[7] Specifically, Bush requested to be allowed "to live with [her] emotional support animal(s) in order to afford [her] the 'equal opportunity to use and enjoy [her] dwelling.'"[8] The attached letter from Dr. Caudill ("Caudill") states:

> Jessica Bush is a patient of mine. It is my opinion that the dogs soothe the symptoms of her illness. I have not evaluated the safety of these animals in terms of behavior and propensity for damage, so I cannot comment directly on that.[9]

---

[4] *Id.*
[5] R. Doc. No. 38-1, at 2.
[6] *Id.* (footnote omitted).
[7] R. Doc. No. 38-3.
[8] *Id.*
[9] R. Doc. No. 38-4.

Defendants argue that Bush then "volunteered to Perez that [Bush] would obtain a 'temperament certification' for the dogs in support of her request" but that such certification was never provided.[10]

In connection with their motion, defendants provided a recording of a conversation between Bush and Perez during which Perez stated that pit bulls were not allowed on the property even if they were ESAs.[11] It is unclear in the record on what date this conversation occurred, though defendants state that it took place in March of 2022. During that conversation, Bush asked whether a temperament certification would be helpful, but Perez did not respond to that request, stating only that she had sent the request "to corporate" to see what they would say.[12]

Bush disputes the timing of her request, arguing that she in fact provided the above-described documentation to "then-BMG employee Aimee Schultz" when she first moved into Pinecrest Apartments in January of 2022.[13] Bush argues that she made a second request to Perez on March 17, 2022 through her then-counsel, which states that Bush "suffers from a mental disability recognized in the Diagnostic and Statistical Manual of Mental Disorders" and that "two dogs were approved as emotional support animals . . . to help alleviate her symptoms."[14] Defendants do not dispute that they received this letter from Bush's then-counsel.[15]

---

[10] R. Doc. No. 38-1, at 2–3.
[11] *See* R. Doc. No. 38-5.
[12] *Id.*
[13] R. Doc. No. 44, at 5.
[14] R. Doc. No. 44-11, at 1 (letter to Perez dated March 17, 2022).
[15] R. Doc. No. 48, at 2.

The parties agree that Perez communicated Bush's request to BMG management and discussed it with BMG Director of Operations Moshe Slepoy ("Slepoy"). The parties further agree that, on April 5, 2022, BMG issued a letter to Bush that stated "[a]fter a careful review of your request, we have determined that your request does not meet the guidelines for a reasonable accommodation and therefore cannot be approved at this time."[16] It further stated that "[t]he health care provider's note that you provided to us stated that he 'has not evaluated the safety of these animals in terms of behavior and propensity for damage'" and that "we are unable to grant your request due to these animals posing a direct threat to the health and safety of others on the property."[17] It further states that "[p]it bulls are known to be aggressive animals and [that] is one of the reasons that they are not allowed on the property" and that "[w]e can accommodate you by offering you an option [of] obtaining animals that conform to our apartment standards and ones that do not pose a threat to others on the property[.]"[18]

On April 26, 2022, Bush's current counsel emailed defense counsel two additional letters from physicians who treat Bush, which contained further information regarding her diagnoses.[19] Then, on May 5, 2022, defendants issued Bush a "notice to vacate." Defendants state that this notice was issued for non-payment of rent.[20] Bush disputes this, arguing that she did in fact pay rent, and

---

[16] R. Doc. No. 38-12, at 2.
[17] *Id.*
[18] *Id.*
[19] R. Doc. No. 38-6.
[20] R. Doc. No. 38-1, at 6.

pointing out that the second page of the notice to vacate lists "unauthorized animals" as an explanation.[21] Though Bush departed the premises, defendants nevertheless filed an eviction proceeding against her.[22]

## II.    LEGAL STANDARD

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio*

---

[21] R. Doc. No. 44-16.
[22] R. Doc. No. 38-13.

5

*Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmovant fails to meet their burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

## III.   ANALYSIS

The FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . that buyer or renter." 42 U.S.C. § 3604(f)(1)(A). The FHA provides the

following definition of a "handicap": a "physical or mental impairment which substantially limits one or more of such person's major life activities, [ ] a record of having such an impairment, or [ ] being regarded as having such an impairment." *Id.* § 3602(h)(1)–(3). Bush alleges that defendants violated the FHA by failing to provide a reasonable accommodation and retaliating against her for requesting the accommodation.[23]

### a. Failure to Make a Reasonable Accommodation

Prohibited discrimination under the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" *Id.* § 3604(f)(3)(B). "In most circumstances, waiving a no-pet rule to allow a disabled resident the assistance of a service animal is a reasonable accommodation." *Chavez v. Aber*, 122 F. Supp. 3d 581, 596 (W.D. Tex. 2015) (quotations and citations omitted). "[H]ousing providers may not limit the breed or size of a dog used as a service animal or support animal just because of the size or breed[.]" U.S. Dep't of Hous. & Urb. Dev., FHEO-2020-01, *Assessing a Person's Request to Have an Animal as a Reasonable Accommodation Under the Fair Housing Act*, 14 (Jan. 28, 2020) (hereinafter FHEO-2020-01) (citing *Bhogaita v. Altamonte*

---

[23] Defendants' motion addresses only plaintiff's claims arising under the FHA. The motion does not address plaintiff's claims for negligent training or LEHOA violations. Additionally, Bush's opposition to the motion alleges that defendants' discovery responses are deficient. However, no discovery-related motions have been filed. Accordingly, the Court makes no findings as to plaintiff's non-FHA claims nor as to the discovery-related disputes.

*Heights Condo. Ass'n*, 765 F.3d 1277 (11th Cir. 2014)); *see also Chavez*, 122 F. Supp. 3d at 597 (rejecting defendants' argument that allowing a tenant to keep a part–pit bull mixed breed dog as an emotional support animal is, as a matter of law, not a reasonable accommodation under the FHA).

To prevail on a claim of failure to provide reasonable accommodations under the FHA, a plaintiff must prove that (1) the plaintiff is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) the defendant knew or should reasonably be expected to know of the disability; (3) "accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling;" (4) the accommodation is reasonable; and (5) defendant refused to make the requested accommodation. *Chavez*, 122 F. Supp. 3d at 595 (quoting *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006)). Defendants argue that Bush cannot establish that the second and fifth showings.

Defendants first argue that plaintiff did not demonstrate that she was disabled at the time she requested a reasonable accommodation,[24] and that she did not submit sufficient documentation to defendants to demonstrate that she has a disability.[25] Though defendants frame this as two separate arguments, both arguments appear to pertain to the second showing that Bush must make: whether the defendants knew

---

[24] R. Doc. No. 38-1, at 8.
[25] *Id.* at 11–12.

or reasonably should be expected to know of the disability. *Chavez*, 122 F. Supp. 3d at 595.[26]

As noted above, defendants argue that Bush submitted her request for reasonable accommodation in March of 2022. They argue that "[t]he only medical documentation submitted with" that request was the Caudill letter, which stated that it was the doctor's opinion "that [plaintiff's] dogs soothe the symptoms of her illness."[27] Defendants argue that this statement is insufficient to put defendants on notice that plaintiff had "a handicap" within the meaning of the FHA. Defendants omit, however, that the Caudill letter was accompanied by a letter from Bush, dated January 17, 2022, that stated that she has "been diagnosed with an emotional disability by my licensed mental health professional" and was therefore "requesting reasonable accommodation for [her] disability under the Fair Housing Act."[28]

"A disabled individual 'need not "speak any magic words"' to request a reasonable accommodation under the FHA or ADA." *Evans v. 210 E. Pearson Condo. Ass'n*, No. 21-3941, 2023 WL 2711613, at *3 (N.D. Ill. Mar. 30, 2023) (quoting *Hunter v. WPD Mgmt., LLC*, 476 F. Supp. 3d 731 (N.D. Ill. 2020)). Such a request need only "contain[ ] sufficient information to place a defendant on notice that the request is

---

[26] To the extent that defendants intend to argue that Bush cannot make the first showing—that she is handicapped within the meaning of 42 U.S.C. § 3602(h)—that argument is unavailing. Defendants admitted in their responses to plaintiff's request for admissions that "Bush is a person with a disability." R. Doc. No. 44-6, at 2. Moreover, they admit that their counsel received documentation from Bush's attorney in April of 2022 that further supported her diagnoses.

[27] R. Doc. No. 38-1, 8.

[28] R. Doc. No. 44-8.

one for a reasonable accommodation." *Elliott v. QF Circa 37, LLC*, No. 16-0288, 2018 WL 2933467, at *7 (S.D. Cal. June 12, 2018) (citation omitted). Though "landlords are not precluded from inquiring into and verifying the asserted handicap or the necessity of the accommodation sought," *Arnal v. Aspen View Condo. Ass'n*, 226 F. Supp. 3d 1177, 1184 (D. Colo. 2016), "[d]isclosure of details about the diagnosis or severity of a disability or medical records or a medical examination cannot be required." FHEO-2020-01, at 14.

In this case, the plain language of Bush's letter—whether received in January or March—put defendants on notice that she was requesting a reasonable accommodation for her disability. Though defendants perhaps could have requested additional documentation regarding Bush's disability, they do not produce any evidence that they did so.[29] Their argument that Bush cannot show that they reasonably should have known of her disability is therefore unavailing. *Chavez*, 122 F. Supp. 3d at 595.

---

[29] Defendants' reliance on *Overlook Mut. Homes, Inc. v. Spencer*, 415 Fed.Appx. 617 (6th Cir. 2011), is misplaced. In that case, "[t]he sole issue before [the] court [was] whether . . . [the housing provider] constructively den[ied] the request for a reasonable accommodation." *Id.* at 620. The court held that the housing provider "was likely entitled to ask for more information than [the tenant] initially provided" and that it did not constructively deny the request by doing so. However, as stated, defendants in this matter have not produced any evidence that they ever requested further documentation regarding Bush's disability. Defendants' reliance on *Grier v. Bryden Mgmt., LLC*, 2019 WL 1046083 (S.D. Ohio Mar. 5, 2019) is unavailing for the same reason. The court in that case noted that the only element at issue was "whether defendants refused to make the requested accommodation" and found "as a matter of law that it was reasonable and lawful for the defendants to seek medical verification when Grier asserted the need for a second ESA." *Id.* at *4, *5.

10

Next, defendants argue that they did not in fact refuse Bush's request for a reasonable accommodation.[30] They argue that Bush was never required to remove the dogs from her residence, and that the April 5 letter "was at most a justified and temporary denial 'at that time' based on the information in the possession of BMG."[31] Defendants rely heavily on the letter's statement that the request could "not be approved *at this time*."[32] Defendants submit that the April 5 letter was simply a request for further information regarding plaintiff's request, arguing that they "were awaiting the temperament certification [allegedly] offered by" Bush.[33] However, the April 5 letter makes no mention of the temperament certification, and does not request any further information from Bush. In fact, it states that "we are unable to grant your request due to these animals posing a direct threat to the health and safety of others on the property."[34]

It is true that "[c]ourts have found no refusal of a request for an emotional support animal despite a delay in providing a final response when the plaintiff was never punished for the animal's presence or was provided a temporary exemption from a no-pets rule while the defendant investigated the basis for the request." *Elliot*, 2018 WL 2933467, at *10. However, Bush alleges, and has pointed to evidence to support, that she *was* punished for the animals' presence by way of the notice to vacate and subsequent eviction, and defendants do not dispute that they issued the

---

[30] R. Doc. No. 38-1, at 12–16.
[31] *Id.* at 14.
[32] R. Doc. No. 38-12, at 2 (emphasis added).
[33] R. Doc. No. 38-1, at 14.
[34] R. Doc. No. 38-12, at 2.

notice to vacate and later filed an eviction lawsuit against Bush. Accordingly, the Court finds that defendants are not entitled to summary judgment as to Bush's reasonable accommodation claim.

### b. Retaliation

The FHA also prohibits retaliation, making it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" the statute. 42 U.S.C. § 3617. A plaintiff claiming that she was retaliated against in violation of the FHA must show that (1) she engaged in an activity protected by the FHA, (2) she was subjected to an adverse action by the defendant, and (3) a causal connection exists between the protected activity and the adverse action. *Oxford House, Inc. v. City of Baton Rouge*, 932 F. Supp. 2d 683, 700 (citing *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007). "Once a plaintiff has made out a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged action." *Id.* (quotations and citations omitted).

"'Protected activities [under the FHA] include the request for a reasonable accommodation for handicapped persons.'" *Chavez*, 122 F. Supp. 3d at 600 (quoting *Donovan v. Woodbridge Maint. Ass'n*, No. 14-995, 2015 WL 1241020, at *4 (E.D. Cal. Mar. 17, 2015)) (alteration in *Chavez*). The filing of a lawsuit for eviction is an adverse action. *See id.*

Defendants, however, argue that Bush cannot demonstrate the requirement of a causal connection. They assert that their eviction of Bush was not retaliatory because she "breached her lease and was evicted for reasons that had nothing whatsoever to do with her dogs."[35] Namely, defendants assert that she was evicted due to non-payment of rent.[36] Defendants omit, however, that the "notice to vacate" provided to Bush mentions not only non-payment of rent but also "unauthorized animals" as an explanation of a lease violation, and states that the "[a]nimals must be removed with[in] 24 hours."[37] Accordingly, the Court finds that a genuine issue of material fact precludes summary judgment on Bush's FHA retaliation claim.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion for summary judgment is **DENIED**.

New Orleans, Louisiana, May 10, 2023.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[35] R. Doc. No. 38-1, at 16.

[36] *Id.*

[37] R. Doc. No. 44-16, at 2. Indeed, the version of the notice to vacate provided by defendants entirely omits the page on which this statement appears. R. Doc. No. 38-10.